IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| RAVAGO AMERICAS LLC; M. HOLLAND COMPANY, LLC; RAVAGO CHEMICAL DISTRIBUTION, INC.; BLUE POLYMERS, LLC; LIANDA CORPORATION; DE RUIJTER INTERNATIONAL USA INC.; and LRP SOLUTIONS INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; JAMIESON GREER, in his official capacity as United States Trade Representative; UNITED STATES DEPARTMENT OF THE TREASURY; and SCOTT BESSENT, in his official capacity as Secretary of the Treasury, <br><br> Defendants. | Case No. 26-cv-725 |

## COMPLAINT

1. Starting in February 2025, President Trump invoked the International Emergency Economic Powers Act (IEEPA) to impose new and substantial tariffs (IEEPA tariffs) on goods imported into the United States from around the world.

2. Plaintiffs are U.S.-based importers of goods. Due to the IEEPA tariffs and executive orders challenged in this action, Plaintiffs have paid—and continue to pay—a substantial amount of money to import their goods to the U.S.

3. The IEEPA tariffs are unlawful. Indeed, this Court and the Federal Circuit have already held that IEEPA does not authorize these tariffs. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025). So has the United States District Court for the District of Columbia. *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025).

4. *V.O.S. Selections* and *Learning Resources* remain pending in the United States Supreme Court, which heard oral argument on November 5, 2025. This Court subsequently issued Administrative Order 25-02, providing that all unassigned complaints brought by importers of record seeking refunds of IEEPA tariffs will be automatically stayed upon filing and held in abeyance pending "a final, unappealable decision" from the Supreme Court.

5. In the meantime, importers like Plaintiffs have moved to protect their rights by filing suits like this one. As this and other courts have held, the IEEPA tariffs and underlying executive orders are unlawful for several reasons, including that they are contrary to IEEPA and would be an unconstitutional delegation of authority under Article I of the U.S. Constitution. Additionally, Defendants' methods in implementing the tariffs violate the Administrative Procedure Act, so must be "h[e]ld unlawful and set aside." 5 U.S.C. § 706(2)(A).

6. Plaintiffs file this action to ensure they receive appropriate relief, including a refund for the unlawfully collected tariffs they have paid, if the Supreme Court invalidates the IEEPA tariffs and challenged executive orders. Plaintiffs seek (i) a declaration that the IEEPA tariffs are unlawful and (ii) a full refund of all IEEPA tariffs Plaintiffs have paid to the United States as a result of the executive orders challenged in this lawsuit, as well as those they will continue to pay.

## PARTIES

7. Plaintiff Ravago Americas LLC is a U.S. corporation incorporated in Delaware with its principal place of business in Florida.

8. Plaintiff M. Holland Company, LLC is a U.S. corporation incorporated in Delaware with its principal place of business in Illinois.

9. Plaintiff Ravago Chemical Distribution, Inc. is a U.S. corporation incorporated in Delaware with its principal place of business in Florida.

10. Plaintiff Blue Polymers, LLC is a U.S. corporation incorporated in Delaware with its principal place of business in Florida.

11. Plaintiff Lianda Corporation is a U.S. corporation incorporated in Delaware with its principal place of business in Ohio.

12. Plaintiff De Ruijter International USA Inc. is a U.S. corporation incorporated in Ohio with its principal place of business in Ohio.

13. Plaintiff LRP Solutions Inc. is a U.S. corporation incorporated in Ohio with its principal place of business in Ohio.

14. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

15. Defendant Department of Homeland Security (DHS) is an agency of the federal government, headquartered in Washington, D.C.

16. Defendant Kristi Noem is the Secretary of DHS and is sued in that official capacity.

17. Defendant United States Customs and Border Protection (CBP) is a component agency of the Department of Homeland Security, headquartered in Washington, D.C. CBP is responsible for, among other things, collecting tariffs or duties and taxes on goods imported into the United States.

18. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in that official capacity.

19. Defendant Office of the United States Trade Representative is the federal agency primarily responsible for developing U.S. trade policy.

20. Defendant Jamieson Greer is the United States Trade Representative and is sued in that official capacity.

21. Defendant Department of the Treasury, headquartered in Washington, D.C., is the federal agency primarily responsible for the national fisc and is where the revenue from the challenged actions is deposited.

22. Defendant Scott Bessent is the Secretary of the Treasury and is sued in that official capacity.

## JURISDICTION

23. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i), because this action is commenced against the United States, and agencies and officers thereof, and arises out of a law providing for tariffs and duties and the administration and enforcement thereof. *See also V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025) (affirming this Court's exercise of jurisdiction), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025); *AM/NS Calvert LLC v. United States*, 654 F. Supp. 3d 1324, 1341-1342 (Ct. Int'l Trade 2023). Further, jurisdiction is proper under § 1581(i) since Plaintiffs have no other adequate remedy under 28 U.S.C. § 1581. *See Calvert*, 654 F. Supp. 3d at 1337.

24. The Court has the same powers at law, in equity, and as conferred by statute as a district court of the United States. 28 U.S.C. § 1585. Thus, in a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and order any other appropriate form of relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. § 2643(a)(1), (c)(1).

25. As importers of record for goods affected by the IEEPA tariffs, Plaintiffs have standing to bring this lawsuit. As a result of Defendants' actions, Plaintiffs have paid IEEPA tariffs to the United States and have therefore suffered injury. This Court can redress Plaintiffs' injuries by invalidating the tariffs and requiring a full refund of the money already paid, as well as any IEEPA tariffs Plaintiffs continue to pay during the pendency of this suit, and awarding any other declaratory or injunctive relief this Court deems just and proper.

## FACTUAL ALLEGATIONS

### A.   President Trump invoked IEEPA as authority for sweeping tariffs.

26. On February 1, 2025, the President issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each order was based on IEEPA's supposed authorization for such tariffs, and for each order the President claimed the tariffs were justified under IEEPA by a purported national emergency.[1]

27. In the following weeks, the President issued additional orders modifying the tariffs he imposed on imports from China in the purported exercise of authority under IEEPA, including expanding the discussion of the supposed emergency and increasing the tariffs on imports.[2]

28. On April 2, 2025, the President issued Executive Order 14257, 90 Fed. Reg. 15,041, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large*

---

[1]   *See* Executive Order 14194, 90 Fed. Reg. 9,117, *Imposing Duties To Address the Situation at Our Southern Border* (Feb. 7, 2025) (imposing 25% tariff on imports from Mexico and citing an emergency regarding "illicit drugs" and "illegal aliens"); Executive Order 14193, 90 Fed. Reg. 9,113, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border* (Feb. 7., 2025) (imposing 25% tariff on most goods from Canada and citing opioid trafficking emergency); Executive Order 14195, 90 Fed. Reg. 9121, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China* (Feb. 7, 2025) (imposing 10% *ad valorem* tariff and citing illicit substances and synthetic opioids as an emergency).

[2]   Executive Order 14200, 90 Fed. Reg. 9,277, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* (Feb. 11, 2025); Executive Order 14228, 90 Fed. Reg. 11,463, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* (Mar. 3, 2025).

*and Persistent Annual United States Goods Trade Deficits*. This order relied on IEEPA and cited the U.S.'s trade deficits with countries around the world as a national emergency that warranted imposing a 10% tariff on almost all imports beginning on April 5, 2025, and additional "reciprocal" tariffs on 57 countries beginning on April 9, 2025. *Id*. at Annex I. These reciprocal tariffs varied widely country-by-country, from 11% to 50%, according to a schedule set out in the order. *Id*.

29. The President has since modified the tariffs imposed by prior executive orders, and the reciprocal tariff regime set forth in Executive Order 14257 several times. The Congressional Research Service has collected and summarized these amendments as of December 31, 2026. *See* Congressional Research Service, *Presidential 2025 Tariff Actions: Timeline and Status* (Jan. 12, 2026) (Table 2), perma.cc/548S-A7DP.[3] Table 2, and the documents and executive orders referenced and hyperlinked therein, are incorporated by reference into this complaint, and, for the avoidance of doubt, Plaintiffs challenge each of these orders and amendments to the extent they are imposed under IEEPA and are therefore unlawful for the reasons stated below.

30. On April 14, 2025, several companies challenged the legality of the President's tariff orders by filing suit in this Court. *See V.O.S. Selections, et al. v. Donald J. Trump, et al.*, No. 25-cv-00066.

31. Since the *V.O.S. Selections* complaint was filed, the President has invoked IEEPA and issued more Executive Orders, imposing additional tariffs and modifying others—for example, by imposing new and additional tariffs on Brazil and India.[4] To the extent the President has invoked IEEPA as a basis for any further orders after the filing of the *V.O.S. Selections* complaint,

---

[3]   *Available at* https://www.congress.gov/crs-product/R48549 (last visited Jan. 15, 2026).

[4]   Executive Order 14323, 90 Fed. Reg. 37,739, *Addressing Threats to the United States by the Government of Brazil* (Aug. 5, 2025) (imposing additional *ad valorem* tariffs on Brazil); Executive Order 14329, 90 Fed. Reg. 38,701, *Addressing Threats to the United States by the Government of the Russian Federation* (Aug. 11, 2025) (imposing additional *ad valorem* tariffs on India, as a result of India's trade with Russia).

or invokes IEEPA as a source of authority for further tariff actions after the filing of this complaint, Plaintiffs challenge those orders in this action. *See* Congressional Research Service, *Presidential 2025 Tariff Actions: Timeline and Status* (Jan. 12, 2026) (Table 2), *supra*.

32. Despite some portions of the tariffs being suspended, delayed, or modified, many tariffs imposed by the orders discussed above (collectively, the "Challenged Tariff Orders") remain in effect.

### B. Defendants implemented the challenged tariff orders.

33. In the Challenged Tariff Orders, the President directed the Secretary of Commerce and the United States Trade Representative, in consultation with the Secretary of Homeland Security, acting through the Commissioner of U.S. Customs and Border Protection and the Chair of the United States International Trade Commission, to modify the Harmonized Tariff Schedule of the United States (HTSUS) by adopting rules and regulations or taking other agency actions necessary to implement the tariffs.

34. CBP is responsible for assessing and collecting import charges, tariffs, and duties, including the IEEPA tariffs at issue here. 19 U.S.C. §§ 1500, 1502; 6 U.S.C. § 212. Under the Challenged Tariff Orders, CBP also filed certain Federal Register notices amending the HTSUS to reflect various new tariffs, among other actions.

35. CBP's regulations govern the classification and appraisement of goods imported into the United States. 19 C.F.R. § 152.11. CBP is responsible for assessing and collecting any tariffs on those goods consistent with the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502. Here, in response to the implementation of the Challenged Tariff Orders, the United States International Trade Commission has repeatedly updated the HTSUS. As a result, importers, including Plaintiffs, have been required to include certain subheadings and other designations mandated by HTSUS on entry declarations filed for imported goods that are covered by the IEEPA tariffs.

**C.    The challenged tariff orders are unlawful and exceed the scope of IEEPA.**

36. On April 14, 2025, several companies filed an action in this Court challenging the legality of the Challenged Tariff Orders imposed prior to that date. *See V.O.S. Selections, et al. v. Donald J. Trump, et al.*, No. 25-cv-00066. This Court subsequently determined that the imposition of tariffs was not authorized by IEEPA. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025).

37. The Federal Circuit stayed this Court's decision and injunction. Sitting *en banc*, the Federal Circuit subsequently affirmed this Court's decision and agreed that IEEPA did not authorize the challenged tariffs. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

38. The U.S. District Court for the District of Columbia reached the same conclusion in another suit. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025). The government appealed that decision, but the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*, consolidated the cases, and heard argument on November 5, 2025.

39. As the foregoing decisions concluded, the Challenged Tariff Orders are unlawful for a variety of reasons. To the extent Plaintiffs challenge orders that postdate *V.O.S. Selections* and *Learning Resources*, but purport to invoke the same or similar authority under IEEPA, those Challenged Tariff Orders are unlawful for the same reasons.

40. For example, as the Federal Circuit observed in affirming this Court's decision, IEEPA does not use the term "tariff" or any of its synonyms in describing the actions the President may take in response to a national emergency. *V.O.S. Selections*, 149 F.4th at 1337.

41. Indeed, *V.O.S. Selections* and *Learning Resources* also observed, the United States Constitution accords to Congress the "Power To lay and collect Taxes, Duties, Imposts and Excises" and "[t]o regulate Commerce with Foreign Nations." U.S. CONST. art. I, § 8, cl. 1 & cl. 3. Thus, the power to impose tariffs falls within the scope of congressional, not executive, authority

under the Constitution. It may be that Congress cannot delegate this authority at all; at the very least, if it does so, it must provide clear limitations on the scope of the delegated power. Because IEEPA evinces no such limitation, any supposed delegation of tariff authority in IEEPA is unconstitutional.

42. Similarly, the "interpretation of IEEPA as providing the President power to impose unlimited tariffs also runs afoul of the major questions doctrine." *V.O.S. Selections*, 149 F.4th at 1334. Ordinarily, under the major questions doctrine, Congress must provide a clear authorization for the power it intends to confer. *West Virginia v. EPA*, 597 U.S. 697, 721 (2022). Here, given the expansive scope of authority the Government has claimed under IEEPA, as well as the departure from prior practice regarding tariffs and duties, the Federal Circuit correctly concluded that Congress did not confer "wide-ranging authority to impose tariffs" when it enacted IEEPA. *V.O.S. Selections*, 149 F.4th at 1337.

43. For these and the other reasons, the IEEPA tariffs and Challenged Tariff Orders are unlawful.

### D. Plaintiffs have paid, and continue to pay, the unlawful tariffs under the challenged tariff orders.

44. Plaintiffs import goods subject to the Challenged Tariff Orders and the IEEPA tariffs.

45. Since the imposition of the IEEPA tariffs, and during the pendency of *V.O.S. Selections* and *Learning Resources*, Plaintiffs have paid and continue to pay the IEEPA tariffs imposed by the Challenged Tariff Orders. Indeed, as a result of the Challenged Tariff Orders, Plaintiffs have paid—and will continue to pay—a substantial sum of money they would not otherwise have been forced to expend to import their goods.

46. When goods are initially imported, the importer of record pays an estimated duty, which CBP reviews and finalizes. After CBP has done so, it liquidates the entry and either demands

further payment or refunds excess payment as appropriate. When an entry is liquidated, the tariff payments are deposited into the U.S. Treasury, which is overseen by the Department of the Treasury and Secretary Scott Bessent. Plaintiffs' tariff payments will be liquidated within one year of the original payment; indeed, some have already been liquidated.

47. After liquidation, an importer of record must ordinarily file a protest within a particular period specified by law. However, in similar proceedings challenging the IEEPA tariffs at issue here, this Court emphasized its "power to order reliquidation and refunds where the government has unlawfully exacted duties." *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, No. 25-00255, Slip Op. 25-154, at 6 (Ct. Int'l Trade Dec. 15, 2025) (quoting *In re Sec. 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021)). Further, this Court confirmed that the Government would be judicially estopped from opposing reliquidation based on its agreement that it would not object to reliquidation if the Supreme Court rules in *V.O.S. Selections* that the tariffs are unlawful. *See AGS Co. Auto. Sols.*, Slip Op. 25-154, at 6.

48. On January 14, 2026, this Court further "confirm[ed] that the Government's stipulation regarding reliquidation applies to all current and future similarly situated plaintiffs," based on the Government's stipulation that it "do[es] not intend to challenge the [c]ourt[']s authority to order reliquidation" in any IEEPA tariff case "challeng[ing] IEEPA tariffs in a manner and on grounds that substantially overlap with" *V.O.S. Selections*, "including those challenging 'IEEPA tariffs imposed on Brazil and India that are not at issue in *AGS* or *V.O.S.*'" *See* Order, *AGS Co. Auto. Sols.*, No. 25-00255 (Ct. Int'l Trade Jan. 14, 2026).

49. To the extent Plaintiffs have paid IEEPA tariffs imposed by the Challenged Tariff Orders, Plaintiffs are entitled to repayment in the event of a favorable judgment. If necessary, this includes reliquidation and repayment of any payments that have liquidated by the time the Supreme Court issues its decision in *V.O.S. Selections*.

## CLAIMS FOR RELIEF

### COUNT I
### IEEPA DOES NOT AUTHORIZE THE TARIFFS IMPOSED UNDER THE CHALLENGED TARIFF ORDERS

50. Plaintiffs incorporate and reallege the foregoing paragraphs as though fully set forth herein.

51. In *V.O.S. Selections*, this Court held that the IEEPA tariffs exceed the President's authority under the statute. As this Court explained, IEEPA only authorizes the President to "investigate, regulate, or prohibit" certain foreign transactions in response to national emergencies, but does not authorize the President to impose tariffs or duties. Neither the text of IEEPA nor its legislative or statutory history evinces a congressional delegation of authority to the President to exercise the authority he purported to exercise in the Challenged Tariff Orders. Thus, as this Court concluded, the Challenged Tariff Orders "exceed any authority granted to the President by IEEPA to regulate importation by means of tariffs." *V.O.S. Selections*, 772 F. Supp. 3d at 1383.

52. The Federal Circuit agreed, evaluating the text of IEEPA and emphasizing that "[t]he power to 'regulate'" [imports] has long been understood to be distinct from the power to 'tax.'" *V.O.S. Selections*, 149 F.4th at 1332-33. While IEEPA may refer to regulating trade as necessary according to a national emergency, that does not include or imply the type of tariff power embodied in the Challenged Tariff Orders. The district court in *Learning Resources* reached the same conclusion. 784 F. Supp. 3d at 223.

53. As the Federal Circuit also concluded in *V.O.S. Selections*, the major questions doctrine forecloses the exercise of such expansive tariff power under IEEPA. 149 F.4th at 1334-35. Given the absence of any textual or legislative indication that Congress intended the President to exercise such tariff authority, the IEEPA does not contain the requisite clear authorizations that courts have found necessary under the major questions doctrine to confer such significant and expansive power.

54. For all these reasons, and the other reasons articulated by the courts and challengers in those actions, the IEEPA tariffs and Challenged Tariff Orders exceed the President's authority under IEEPA and are unlawful, void *ab initio*, and without effect as applied to Plaintiffs. To the extent that any of the Challenged Tariff Orders postdate the complaints in *V.O.S. Selections* and *Learning Resources*, they are unlawful, void *ab initio*, and without effect as applied to Plaintiffs for the same reasons.

## COUNT II
### THE IEEPA TARIFFS IMPOSED UNDER THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL UNDER ARTICLE I AND THE NON-DELEGATION DOCTRINE

55. Plaintiffs incorporate and reallege the foregoing paragraphs as though fully set forth herein.

56. Even if IEEPA authorizes the imposition of some tariffs—contrary to its plain text and ordinary meaning—the Challenged Tariff Orders are unlawful because that interpretation would render IEEPA an impermissible delegation of congressional power to the President. The Taxing and Commerce Clauses of the U.S. Constitution consign to Congress both the "Power To lay and collect taxes, Duties, Imposts and Excises," and the power "[t]o regulate Commerce with foreign Nations." U.S. CONST. art. I § 8, cl. 1 & cl. 3. The authority to impose tariffs falls within these designated congressional prerogatives. And even if such a delegation were permissible, IEEPA lacks any boundaries that would cabin the President's exercise of the quintessentially legislative power to impose tariffs on inputs, violating the separation of powers and the non-delegation doctrine.

57. For all these reasons, and the other reasons articulated by the courts and challengers in those actions, the IEEPA tariffs and Challenged Tariff Orders exceed Congress's ability to delegate authority to tax or levy duties and are unlawful, void *ab initio*, and without effect as applied to Plaintiffs. To the extent that any of the Challenged Tariff Orders postdate the complaints in

*V.O.S. Selections* and *Learning Resources*, they are unlawful, void *ab initio*, and without effect as applied to Plaintiffs for the same reasons.

## COUNT III
## DEFENDANTS' IMPLEMENTATION OF THE IEEPA TARIFFS AND CHALLENGED TARIFF ORDERS VIOLATES THE ADMINISTRATIVE PROCEDURE ACT

58. Plaintiffs incorporate and reallege the foregoing paragraphs as though fully set forth herein.

59. Under the Administrative Procedure Act (APA), courts must "hold unlawful and set aside agency action" that is "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).

60. Defendants' actions are "final" under the APA because they "mark the 'consummation' of the agency's decisionmaking process" and impose "legal consequences": namely, the IEEPA tariffs that Plaintiffs have been forced to pay. *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997); *see also* 5 U.S.C. § 702.

61. Here, because the Challenged Tariff Orders and the IEEPA tariffs are not authorized by the statute and violate the Constitution, and the Defendants' implementation of them is arbitrary and capricious, the Court should "hold unlawful and set aside" Defendants' actions. 5 U.S.C. § 706(2)(A); *see also Learning Resources*, 784 F. Supp. 3d at 230 (finding plaintiffs likely to succeed on their challenge under the APA).

## COUNT IV
## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201

62. Plaintiffs incorporate and reallege the foregoing paragraphs as though fully set forth herein.

63. Under 28 U.S.C. § 2201(a), federal courts "may declare the rights and other legal relations of any interested party seeking such a declaration" in "any case of actual controversy" within the Court's jurisdiction.

64. Here, Plaintiffs' claims present an actual controversy within the Court's jurisdiction regarding the IEEPA tariffs and Challenged Tariff Orders, for all the foregoing reasons. Moreover, Plaintiffs have been injured by the IEEPA tariffs and the Challenged Tariff Orders as explained above. This Court can therefore exercise its power under the Declaratory Judgment Act to declare the IEEPA tariffs and Challenged Tariff Orders unlawful, and declare that Defendants had no authority (and have no ongoing authority) to collect the tariffs from Plaintiffs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and that the Court:

1. Declare that the Defendants lack authority to impose tariffs under IEEPA;

2. Declare that the Challenged Tariff Orders exceeded Defendants' authority and are *void ab initio* as to Plaintiffs;

3. Declare that, with respect to Plaintiffs, Defendants lack authority to implement and collect any tariffs based on the Challenged Tariff Orders or IEEPA;

4. Permanently enjoin Defendants from imposing and enforcing any tariffs as to Plaintiffs that are based on the Challenged Tariff Orders or IEEPA;

5. Vacate and set aside, under the APA, any actions taken to implement or enforce the Challenged Tariff Orders as to Plaintiffs;

6. Order Defendants to refund Plaintiffs the tariffs paid according to the IEEPA tariffs and Challenged Tariff Orders, with interest provided by law, including ordering the United States to reliquidate any entries as necessary to provide Plaintiffs full relief;

7. Award Plaintiffs reasonable costs, including attorney's fees, incurred in bringing this action;

8. Award Plaintiffs such other and further relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: January 16, 2026 | Respectfully submitted,<br><br>/s/ *Reinle Bray McDonnell*<br>Paul W. Hughes*<br>Andrew Lyonsberg*<br>Charles Seidell*<br>Michael Mestitz*<br>Reinle Bray McDonnell<br>MCDERMOTT WILL & SCHULTE LLP<br>500 North Capitol Street NW<br>Washington, DC 20001<br>(202) 756-8000<br>phughes@mwe.com<br><br>**Application for admission forthcoming*|
| | *Counsel for Plaintiffs* |